Herbert A. Chianese v. Commissioner.
Chianese v. Commissioner
Docket Nos. 19423, 19953.
United States Tax Court
1950 Tax Ct. Memo LEXIS 161; 9 T.C.M. (CCH) 627; T.C.M. (RIA) 50201; June 30, 1950
*161 Harry W. Goldberg, Esq., 1511 K St., N.W., Washington, D.C. for the petitioner. E. M. Woolf, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing, involve income tax deficiencies and penalties as follows: 50%
Delinquency
Year
Deficiency
Penalty
Penalty
1945
$648.00
$324.00
$97.20
1946
402.26
201.13
Petitioner alleges that the respondent erred in determining the 50 per cent fraud penalties for 1945 and 1946; in determining the 15 per cent delinquency penalty for 1945; and in determining that petitioner profited to the extent of $2 per day on his $8 per diem reimbursements for overseas travel expenses in 1945. Findings of Fact The petitioner during 1945 and 1946 was a resident of Arlington County, Virginia. His returns for those years were filed with the collector at Richmond, Virginia. Petitioner was employed by Transcontinental & Western Air, Inc., (T.W.A.) in 1940 as a mechanic. He was stationed at LaGuardia Field, New York, until August 1942 when he was transferred to the National Airport, Washington, D.C. For a short while he lived in a tourist camp *162 with his wife, who joined him in September 1942. Later they moved into an apartment on North Pocomoke Street, Arlington, Virginia, where they lived until December 1946. After coming to the Washington, D.C., area petitioner underwent training for flight engineer, for which he qualified in July 1945. He was then assigned to the Intercontinental Division of T.W.A. In December 1946 he was transferred to Rome, Italy, where he remained for about fifteen months. From January until December 1945 petitioner made only local training flights for T.W.A. After qualifying as flight engineer he made overseas flights from Washington to a number of foreign countries. He was on foreign travel during 1945 for a total of 75 days for which he received travel reimbursement from T.W.A. at the rate of $8 per day, amounting to $600. He received $490 of that amount in 1945 and $110 in 1946. Petitioner's actual travel expenses while on foreign travel in connection with his employment amounted to approximately $8 per day, the amount allowed him by T.W.A.
In his 1945 return petitioner reported a gross salary of $4,848.75, partial travel reimbursement of $490, and a net income of $1,988.05 after the following *163 deductions, which were set out in a schedule of expenses attached to the return: Expenses: U.S. Travel - Baltimore, Norfolk,
Washington, Philadelphia, Wil-
mington, Newark, Columbus,
Westover, Mass., Richmond, Bur-
lington, Concord, Hartford, An-
napolis, Wheeling, Harrisburg,
Charleston
Hotel
$2.00
Meals
2.50
Cabs to and from ports
1.00
Telephone reports
.40
Tips and misc.
.75
204 days at
$6.65
$1,356.60
R.R. and plane travel
143.40
Comm. ration travel 12,600 at 5 cents mi.
630.00
Uniforms and replacements
130.00
Equipment maintenance
156.00
Equipment and supplies
122.50
Plane liability insurance (required)
40.20
Long distance calls and cables
40.00
Foreign Travel - Bermuda, Azores,
Lisbon, Casablanca, Tripoli,
Cairo, Paris, Abbadau, Iran,
Greece, England, Scotland, Italy,
Iceland, Newfoundland, Green-
land, Labrador
61 days at $12.00
732.00
$3,350.70 The return showed a tax due of $196 and an overpayment by reason of withholdings of $621.58. In preparing his 1945 return petitioner obtained the services of Bernard P. Nimro, a tax consultant with the firm of Maury-Henry Company, Washington, D.C. He *164 visited Nimro at his office in January and again in February 1946, furnishing him certain information for use in the return. He again visited Nimro on March 13, 1946, and at that time signed a blank return which Nimro said he would fill out and file for the petitioner. He paid Nimro $25 and agreed to pay him 10 per cent of any refund that might be received. Nimro did not file the return until May 28, 1946. Petitioner had no domestic travel in connection with his employment in 1945 but did during the time he was stationed in Washington, D.C., make journeys to the various cities listed in his return on private or personal business. He made numerous trips between New York and Washington bringing his family to Washington or taking them to New York. Nimro advised petitioner that if his home was in the State of New York prior to accepting employment with T.W.A. in Washington, D.C., he was entitled to deduct additional living expenses while away from the State of New York and in connection therewith he was entitled to deduct all travel expenses to cities in the United States, regardless of whether he was on company business or private business. Petitioner furnished Nimro with the names *165 of cities he visited in the United States during the year 1945, along with other data, for Nimro's use in preparing and filing his 1945 return and signed a blank form 1040 to be filled out and filed for him by Nimro. He did not see the schedule of travel expenses which Nimro inserted in his 1945 return until the latter part of the year 1946, after he had received a refund of taxes withheld. Petitioner relied on Nimro's advice and believed that he would and did file a proper return for him. After receiving this refund, petitioner was certain that his 1945 return was all right and in proper form. Petitioner tried to contact Nimro for the filing of his 1946 income tax return but was unable to find him and, believing that his 1945 return prepared by Nimro was proper in all respects, used same as a pattern in preparing his own 1946 return. His living and travel expenses in the United States were substantially in accord with the total amount set forth in his 1946 return as "United States Travel" and the petitioner believed that he was entitled to the deduction and that it was set up in the proper manner. A part of the travel expense last mentioned was personal business travel expense and *166 not in connection with petitioner's employment. Nimro was a disbarred attorney who had formerly served a penitentiary sentence for embezzlement. While stationed in Rome the petitioner prepared and signed a tentative return for 1946 which he mailed to the collector at Richmond, Virginia, on June 12, 1947. Later petitioner prepared a final return for 1946 which he filed with the collector at Richmond on December 17, 1947. The 1946 return was patterned upon the 1945 return. It showed a gross salary of $5,582.04, partial travel reimbursement of $1,244.39, and a net income of $3,548.86 after deduction of the following expenses: Expenses: U.S. Travel - New York, Westover,
Mass., Boston, Philadelphia, Chi-
cago, Newark, New Castle, Del.,
Reading, Pa., Wilmington, Del.,
Kansas City, Mo., Chester, Pa.,
Yonkers, Valley Stream, Wash-
ington, D.C.
Hotel
$2.50
Meals
2.50
Cabs to and from ports
.75
Telephone reports
.20
Tips and misc.
1.00
168 days at
$6.95
$1,167.60
R.R. and plane travel
90.77
Comm. ration travel 11,460 at 5 cents mi.
573.00
Uniform acces. and maint.
107.00
Equipment and supplies and re-
placement
126.00
Plane liability insurance (required)
40.20
Long distance calls, cables and re-
quired telephone
57.00
Foreign Travel - Bermuda, Azores,
Lisbon, Casablanca, Tripoli,
Cairo, Paris, Daharan, Iran,
Greece, England, Scotland, Ire-
land, Italy, Newfoundland, Swit-
zerland, Labrador, Spain
93 days at $12.00
1,116.00
$3,277.57
*167 Petitioner was on travel status in 1946 for 117 days of domestic and 81 3/4 days of foreign travel for which he received reimbursement of $1,481.31 in 1946 and $75.83 in 1947. Respondent disallowed all of the expense deductions claimed by the petitioner in his 1945 return. However, he allowed the petitioner expenses of $6 per day for 61 days of foreign travel in that year. He determined, as a result, that petitioner realized a gain of $2 per day on the $8 per day allowed him for foreign travel. For 1946 respondent disallowed $2,033.18 of the $3,277.57 of expenses deducted in the return, allowing the deduction of $1,244.39 as the amount of petitioner's actual travel expenses for that year. He determined a tax liability for that year of $818.26, which is $402.26 in excess of the amount of tax reported by the petitioner in his final return, $416. He also added the fraud penalty of $201.13. Petitioner's return for 1945 was incorrect in that it contained items of expense deductions which petitioner had not paid or incurred. The petitioner was not on travel in the United States for 204 days, as claimed in the return. He had no travel in connection with business in the United States *168 in that year. Petitioner's 1946 return was incorrect in that petitioner claimed the deduction of expenses which he had not paid or incurred. Petitioner was not on travel in the United States for 168 days in 1946. He did not stay at hotels or pay for meals or cab fares for 168 days, as reported in the schedule attached to his return for that year. Petitioner's returns for 1945 and 1946 were not false and fraudulent with intent to evade taxes. Opinion LEMIRE, Judge: The principal issue involved in these proceedings is whether petitioner is liable for the 50 per cent fraud penalties which the respondent has determined against him for both 1945 and 1946. We have found as a fact on the evidence before us that petitioner's returns for both years were incorrect because in them the petitioner claimed the deduction of expenses which he had not paid or incurred, but that the returns were not false and fraudulent with intent to evade tax. Petitioner admitted in his testimony that many of the expense items were false but he placed the blame for them on his tax consultant, Nimro, who had prepared the 1945 return. Nimro had no part in the preparation of the 1946 return but in making it out *169 himself the petitioner followed the pattern of the 1945 return which Nimro had made. The facts here are much like those in Charles C. Rice, 14 T.C. 503, where we held that the evidence failed to show that the returns under consideration were false and fraudulent with intent to evade tax. There, as in the instant case, some of the travel expenses claimed in the return filed by the taxpayer, who was also a T.W.A. pilot, had not been incurred or paid but we found further that the taxpayer's error was due to his mistaken belief, for which Nimro may have been responsible, that he was entitled to deduct all of his living expenses while away from Anniston, Alabama, which he claimed as his legal residence. Also, in Dale R. Fulton, 14 T.C. 1453, No. 169 (June 30, 1950), we found on facts similar to those in the instant case that the false claims in the return were attributable to Nimro rather than the taxpayer. On the evidence in this case we find that petitioner did not knowingly file false and fraudulent returns with intent to evade tax. For lack of any showing of a reasonable cause for petitioner's failure to file his return within the time prescribed by statute, *170 respondent is sustained in his proposed assessment of the delinquency penalty for that year. The petitioner, of course, makes no showing of a reasonable cause by merely stating that he signed the return in blank and left it with Nimro to be filed. There is no attempt to explain the failure of Nimro, as petitioner's agent, to file the return on time. The only objection which the petitioner offers to respondent's determination of his taxable income for either year is the inclusion in gross income for 1945 of a gain of $2 per day for reimbursement of foreign travel for that year. We have found on the evidence that petitioner's actual expenses while on foreign travel in 1945 were $8 per day, which was the amount allowed him by T.W.A. Therefore, respondent erred in determining that petitioner realized a gain of $2 per day on his reimbursement of $8 per diem for foreign travel. Decisions will be entered under Rule 50.